UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| THERESA SAMMONS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 4:05-cv-0028-JDT-WGH |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING MOTION FOR**

**PARTIAL SUMMARY JUDGMENT (Docket No. 28)**[1]

In this action, Plaintiff Theresa Sammons seeks insurance coverage for damage to her home under a homeowners' policy issued by Defendant State Farm Fire and Casualty Company ("State Farm").  She brings two claims for relief, breach of contract and breach of duty of good faith and fair dealing, and specifically seeks damages for the reasonable cost of restoration of the home, the loss of use of her home and the impairment of her health, and reasonable attorneys' fees.  State Farm moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on Ms. Sammons' claim for breach of duty of good faith and fair dealing, arguing that "there is absolutely no evidence, let alone clear and convincing evidence, to support a finding that State Farm committed the intentional tort of bad faith."  (Mem. Supp. Mot. P. Summ. J. 3.)

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

State Farm also seeks a determination that there is no coverage under Ms. Sammons' homeowners' policy for any property damage caused by or consisting of mold.  Ms. Sammons responded to State Farm's motion for partial summary judgment on April 3, 2006, with a reply brief being filed on April 18, 2006.  The motion therefore is fully briefed and ripe for determination.

**I.     BACKGROUND**

On January 24, 2004, Ms. Sammons discovered a leak in the bathtub in the master bathroom of her home at 14033 Ireland Road in Moores Hill, Indiana.  As a result of the leak, water damage occurred in not only her master bathroom, but the entire master suite.

At the time the leak occurred and was discovered, Ms. Sammons' home was insured by State Farm under Homeowners Insurance Policy Number 14-C2-6175-5 (the "Policy"), which had a policy period of May 22, 2003 to May 22, 2004.  After Ms. Sammons reported the leak and water damage to State Farm through agent Richard A. Titus, contractor Hartzell Restoration, a/k/a Hartzell Deep Steam, Inc., ("Hartzell") was retained to repair the damage.  Hartzell was a State Farm preferred provider of services that had been retained by other State Farm insureds on at least ten other occasions.

After Hartzell had completed the repairs of Ms. Sammons' home, Ms. Sammons contends that she discovered that Hartzell had not dried the majority of the insulation and other materials that had become wet by the water leak, and that there were still slits in the vapor barrier protecting the insulation.  As a result, Hartzwell informed State Farm

2

that Ms. Sammons was not satisfied with its work, and later, Ms. Sammons informed State Farm that she had discovered mold growing in the area where the work had been done. It is disputed whether the presence of mold was confirmed. Ms. Sammons refused to pay Hartzell for the work completed with the joint checks provided by State Farm, and so State Farm paid Hartzell's entire bill, including the $500 deductible.

## II.   DISCUSSION

In her complaint, Ms. Sammons brings two claims for relief against State Farm related to Hartzell's work—breach of contract and breach of duty of good faith and fair dealing. State Farm first seeks summary judgment on the bad faith claim, contending that it must be dismissed because "the Plaintiff has come forth with no evidence showing that State Farm, while handling the Plaintiff's claim, possessed the requisite mental culpability for finding bad faith under Indiana law." (Mem. Supp. Mot. Partial Summ. J. 3.) It also seeks a determination that there is no coverage under Ms. Sammons' homeowners' Policy for any property damage caused by or consisting of mold. It argues that "the Policy explicitly excludes any loss to property consisting of or directly and immediately caused by mold." (*Id.*)

### A.   Standard of Review

Construction of a written contract such as an insurance policy is a question of law for which summary judgment is particularly appropriate. *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind. Ct. App. 1995). The purpose of summary judgment

is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

### B.     Claim for Breach of Duty of Good Faith and Fair Dealing

State Farm first seeks dismissal of Ms. Sammons' claim for breach of duty of good faith and fair dealing, arguing that the undisputed facts support its good faith handling of Ms. Sammons' claim, as required by Indiana law.  *See, e.g., Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002).  It describes in great detail the efforts it made in evaluating the damage to Ms. Sammons' home, and its attempts to ensure that the damage was repaired quickly and correctly.

Ms. Sammons appears to agree with State Farm's assessment.  In her Memorandum in Response to Defendant's Motion for Partial Summary Judgment, she "concedes that the Defendant . . . did not act in bad faith in the manner in which it

discharged its duties to settle the claims in this case." (Mem. Resp. Mot. Partial Summ. J. 1.) As a result, she withdraws her claim for breach of duty of good faith and fair dealing. Therefore, the court need not consider it, and can turn to the more hotly contested issue—mold.

    **C.    Mold Exclusion**

In moving for summary judgment on the issue of whether Ms. Sammons' Policy excludes coverage for the losses at issue here, State Farm contends that the majority of Ms. Sammons' damage as alleged stemmed from Hartzell's failure to remove wet materials and completely repair her home, which resulted in the development of mold in the home. And because Ms. Sammons' Policy specifically excludes from coverage "any loss to property consisting of or directly and immediately caused by mold" (*id.*), State Farm argues that those damages are excluded from the Policy's coverage.

The operative Policy and attached endorsement state as follows with regard to mold:

> 1.    We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> \*  \*  \*

  g.  **Fungus**.[2]  We also do not cover:

    (1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

    (2) any remediation of **fungus**, including the cost to:

      (a) remove the **fungus** from covered property or to repair, restore or replace that property; or

      (b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

    (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of the covered property.

All other policy provisions apply.

However, we do insure for any resulting loss from items a. through m.[3] unless the resulting loss is itself a Loss Not Insured by this Section.

(Policy 9, Endorsement FE-5398 (emphasis in original).)

---

[2] Under the Policy terms, "fungus" includes the following: mold, mildew, mycotoxins, sores, scents or byproducts produced or released by fungi.  (Endorsement FE-5398.)

[3] The inconsistent referral to subsections "a. through m." versus "a. through n." appears in the Policy itself.

Under Indiana law, which applies to this diversity case, an insurance policy is a contract between the insurer and the insured; thus, insurance contracts are subject to the same rules of interpretation as are other contracts. *Eli Lilly & Co. v. Home Insurance Co.*, 482 N.E.2d 467, 470 (Ind. 1985). These general rules of construction are outlined in *Huntington Mutual Insurance Company v. Walker*, 392 N.E.2d 1182 (1979):

> It is an elementary rule of construction that one should give words their ordinary meaning . . . . When interpreting the provisions of an insurance policy, the court cannot extend the coverage delineated by clear and unambiguous language in the insurance contract . . . . However, it is well-settled that where the language of an insurance contract is so ambiguous as to be susceptible of more than one interpretation, the court will adopt a construction most favorable to the insured . . . . This is all the more so where the particular provision in dispute purports to create an exclusion from coverage under the general terms of the policy . . . . A condition or exclusion in an insurance contract, therefore, in order to be effective, must clearly and unmistakingly bring within its scope the particular act or omission that will bring the condition or exclusion into play . . . . Coverage will not be excluded or destroyed by an exclusionary condition unless such clarity exists.

392 N.E.2d at 1185 (citations omitted).

Under these rules of construction, the court finds the mold exclusion in Ms. Sammons' Policy to be unambiguous. It clearly and unmistakingly excludes coverage for "any type of form of fungus, including, mold, mildew, mycotoxins, sores, scents or byproducts produced or released by fungi" (Endorsement FE-5398)—with no

7

exceptions. The plain meaning of this exclusion is that the Policy does not cover the mold losses claimed by Ms. Sammons her complaint.

Apparently, Ms. Sammons' Policy contains an exception for coverage of an "ensuing loss." Under this language, any loss Ms. Sammons suffered as a result of covered damages is itself a covered loss, unless "the resulting loss is itself a Loss Not Insured." Ms. Sammons contends that because the mold growing in her home ensued from the bathtub leak and resulting water damage, it is a covered loss. However, under the express terms of her Policy, mold is a "loss not insured" under all circumstances, including previous leaks and water damage. Therefore, mold does not fall into the ensuing loss exception to the Policy exclusions. Indeed, the mold exclusion itself is quite clear that any and all losses resulting from mold are excluded from the Policy's coverage, with no exception.

There do appear to be many genuine issues of fact surrounding State Farm's involvement with Hartzell in completing the repairs, including whether it retained Hartzell, dictated the scope of Hartzell's work and fees, and paid Hartzell. However, those issues are not material to the court's analysis of the mold exclusion at issue in the instant motion, as they do nothing to change language of the Policy, which is controlling. *Pennington v. Am. Family Ins. Group*, 626 N.E.2d 461, 464 (Ind. Ct. App. 1993). The Policy unambiguously excludes coverage for losses resulting from mold, regardless of the insurer's involvement in the repair of the losses, or the reason for the mold's growth in the home. Indeed, even if it could be shown without dispute that State Farm's involvement with the repairs rose to the level of it becoming "a direct participant with

8

Hartzell in perpetuating the harm" (Resp. 2), as Ms. Sammons contends, the Policy language still would exclude any losses resulting from mold. Similarly, whether Ms. Sammons informed State Farm of its need to handle wet materials properly or her sensitivity toward mold are of no import here. The Policy language still controls.

Because of generalized arguments in Ms. Sammons' response brief that hint at another non-contractual theory of State Farm's potential liability, such as negligence, State Farm focuses its reply brief on the question of whether it had a duty to Ms. Sammons with respect to the repairs completed by Hartzell beyond any duty of good faith and fair dealing contemplated by the Policy. It contends that no such duty exists as a matter of law, citing *Bartlett v. State Farm Mutual Automobile Ins. Co.*, 2002 WL 31741473, *4-5 (S.D. Ind. 2002) and *Hooiser Insurance Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001). State Farm also argues that even if such a duty exists, Ms. Sammons did not assert a claim for negligence (or any theories other than breach of contract and the duty of good faith and fair dealing) in her complaint. Based on these contentions, State Farm seeks a determination that any claims other than breach of contract, such as negligence against it cannot proceed.

This may well be true. But whether State Farm owed Ms. Sammons a duty beyond the well-recognized duty of good faith and fair dealing that arose from their contractual relationship has "nothing to do with the operative issue of whether or not the mold exclusion applies in this case . . . ," as State Farm acknowledges. (Reply 9.) Indeed, State Farm did not move to dismiss or for summary judgment on matters other than the bad faith assertion and the mold exclusion, such as a potential negligence

9

claim, which would have afforded Ms. Sammons the opportunity to respond to its contentions, and the court the opportunity to explore them in greater detail.  If State Farm sought a determination of whether Indiana law would support a theory of damages outside of its contractual relationship with Ms. Sammons, and, if so, whether Ms. Sammons adequately pled such, it could have requested as much from the court.  It did not do so in the instant motion.  The court, therefore, will not presently take up the issue.

In sum, the court concludes that the Policy provides no coverage for any losses caused by or consisting of mold because they fall within the Policy's clear and unambiguous mold exclusion and Ms. Sammons' bad faith allegations are unsupported. State Farm will be granted summary judgment on these issues alone.

### III.   CONCLUSION

For the reasons stated above, the Defendant's Motion for Partial Summary Judgment (Docket No. 28) will be **GRANTED** as to the mold exclusion and bad faith issues only.  However, due to the pendency of at least one remaining claim, and to avoid the possibility of multiple appeals, no final, appealable judgment will be entered until all remaining issues in the case also are decided.

ALL OF WHICH IS ENTERED this 2nd day of June 2006.

John Daniel Tinder, Judge
United States District Court

Copies to:

Dennis F. Cantrell
Bingham McHale, LLP
dcantrell@binghammchale.com

Larry L. Eaton
Eaton & Day
eatonlaw@suscom.net

Anna E. Muehling
Bingham McHale
amuehling@binghammchale.com

James P. Strenski
Bingham McHale LLP
jstrenski@binghammchale.com

Magistrate Judge William G. Hussmann